32177. HUELL *et al.* *v.* SOUTHEASTERN STAGES INC.

313

DECIDED DECEMBER 3, 1948. REHEARING DENIED DECEMBER 15, 1948.

*Randall Evans Jr.,* for plaintiffs in error.
*Milner & Stephens,* for defendant.

GARDNER, J. ■ The plaintiffs sued Southeastern Stages Inc. for the value of the life of their father. The petition alleged, and the evidence, insofar as the testimony of the plaintiffs is concerned, shows that the defendant negligently killed the father. The evidence for the defendant was in conflict with that of the plaintiffs in some respects. The jury returned a verdict for the defendant. The evidence amply sustains this verdict insofar as the general grounds are concerned. The plaintiffs filed an amendment to the original motion. This amendment contains thirteen special grounds. We will discuss them in the order argued and not numerically as they appear in the record.

■ The defendant operated a bus for the purpose of transporting passengers for hire. On the date of the homicide, Troy Hardin was operating the bus as a common carrier of passengers. After the jury had been stricken and before any evidence had been presented, the attorney for the plaintiffs stated that he desired to cross-examine the bus driver. The bus driver was called to the witness stand, and the court held that he was not an agent for the defendant within the provisions of the Code (Ann. Supp.) § 38-1801, which reads as follows: ". . Provided, that in the trial of all civil cases, either plaintiff or defendant shall be

permitted to make the opposite party, or any one for whose immediate benefit such suit is prosecuted or defended, or any agent of said party, or agent of any person for whose immediate benefit such suit is prosecuted or defended, or officer or agent of a corporation when a corporation is such party, or for whose benefit such suit is prosecuted or defended, a witness, with the privilege of subjecting such witness to a thorough and sifting examination, and with the further privilege of impeachment, as if the witness had testified in his own behalf and were being cross-examined." In our opinion the driver of the bus was clearly an agent of the common-carrier bus company under that section of our Code, and the court erred in not permitting the plaintiffs to subject the bus driver to the cross-examination of the attorney for the plaintiffs. On the occasion in question the bus driver was the alter ego of the common-carrier defendant. *Davis* v. *Jones, 34 Ga. App.* 7 (129 S. E. 892); *Moore* v. *DeKalb Supply Co., 34 Ga. App.* 375 (129 S. E. 899); *Atlanta Laundries* v. *Goldberg, 71 Ga. App.* 130 (30 S. E. 2d, 349). But this error on the part of the court does not require a reversal under the facts of this case. This is true for the reason that, before the evidence was closed, the defendant put the bus driver on the stand as its witness, and before he left the stand he was submitted to the attorney for the plaintiffs for cross-examination. He was subjected to an unhampered, thorough, and sifting cross-examination by able counsel for the plaintiffs. This cured the error and made it harmless. Our attention is called to, and plaintiffs rely for a reversal on, the cases of *Rainey* v. *Moon, 187 Ga.* 712, 717 (2 S. E. 2d, 405), and *Davis* v. *Wright, 194 Ga.* 1 (21 S. E. 2d, 88). These cases, under their facts, are clearly distinguishable from the issue under consideration in the instant case. When the court refused to submit the bus driver to a cross-examination by the opposite party, the plaintiffs filed exceptions pendente lite. Since we have discussed the question under this special ground, we might add that the exceptions pendente lite are controlled by what we have already said on the question.

■ Error is assigned on the refusal to give a timely written request as follows: "As applied to this case, if you find that the defendant's bus was being operated at a speed of more than

55 miles per hour, then that is negligence per se, or negligence of itself, and if that negligence was a proximate cause of the death of Luther Huell, the plaintiffs would be entitled to recover on proof of this ground of negligence alone." ' This ground is based on the allegation of the petition that the bus was being operated at a speed greater than 55 miles per hour, the maximum speed of a bus of the type in question. There was evidence on behalf of the plaintiffs to support this specification of negligence. This principle of law was applicable to the allegations of fact and the proof submitted to sustain it. After having read the charge as a whole carefully, we are convinced that this assignment of error requires no reversal. It is true that the judge did not charge in the exact language of the request, but he did charge substantially and clearly the same principle of law, and after having read the charge in its entirety, it appears that the charge went even further than the request in its elaboration as to this phase of the defendant's contentions. During the course of its charge the court called the attention of the jury to the specifications of negligence, and charged to the effect that, if the plaintiffs proved any one or more of the specifications of negligence, they would be entitled to recover. In dealing with this particular specification of negligence, the court said: First, it is alleged as one act of negligence, "that the driver was exceeding the maximum speed limits of the laws of Georgia, that is, he was driving faster than 55 miles per hour." Then the court called attention to the other specifications of negligence, and had this to say: "Those are the acts of negligence which the plaintiffs in this case complain that the Southeastern Stages driver was guilty of"; and then in effect, that it was solely a question for the jury to determine as to whether the plaintiffs had or had not proven one or more of the acts of negligence alleged. And elsewhere in the charge and with reference to the speed of the bus, the court further said: "I charge you respecting the speed limit of motor vehicles that, although the law allows a maximum speed limit of 55 miles per hour for passenger vehicles with pneumatic tires, the maximum speed limit is qualified by the provision that the speed shall not under any circumstances be greater than is reasonably safe, having due

regard to the existing conditions, including width, grade, character, traffic, and common use of such street or highway; and further, the speed shall not be such as to endanger the life or limb or property in any respect whatsoever. But, gentlemen, it is entirely a question for you to determine under all the evidence, facts, and existing circumstances as to whether or not there was any violation of the speed limit on the part of the Southeastern Stages. That is purely and entirely a question for you, to be determined under the rule which has been given you. But on the other hand, if the speed of the bus at the time of the death of Luther Huell, and immediately before his death, was not in excess of 55 miles per hour, but was not at such rate as was greater than reasonable and safe under the existing conditions, and that such speed was negligence and was a proximate cause of the death of Luther Huell, the plaintiffs would be entitled to recover on this ground of negligence alone." This principle of law—that the bus company would be liable to the plaintiffs if the bus was being operated at the time under such circumstances at less than 55 miles per hour but at a greater speed than "is reasonable and safe and having due regard to the existing conditions, including width, grade, character, etc."—was not alleged as an act of negligence, yet the court submitted it in connection with the maximum speed limit of 55 miles per hour. We think that the court was right, under the evidence of this case and in connection with and as explanatory of the 55 miles maximum-speed limit, in charging the reasonable and safe principle in connection therewith, which was more favorable to the defendant than the request. The request to charge in principle was clearly given, and in connection therewith and in explanation of the maximum speed limit of 55 miles per hour, the court gave the plaintiffs the benefit of a principle of law which the evidence authorized and which was more favorable to the plaintiffs than was couched in the request to charge. It is true that the judge did not use the words, "negligence per se," but the charge he did give covered the principles in the request, and the jury could not have misunderstood them. We do not think that, since we have quoted the request to charge and other excerpts from the charge, it is necessary or could serve any good purpose to cite decisions in

support of what we have said. It is purely and simply a question of whether the charge as a whole as compared with the request requires a reversal. We do not think so. This ground is not meritorious.

■ Error is assigned on the court's failure to charge the jury on certain principal contentions of the plaintiffs as shown by the petition. We have read the petition carefully, as well as the evidence. We have no hesitancy in saying that the charge as a whole fairly and clearly presented the contentions of the plaintiffs. We deem it unnecessary to quote here the charge pertaining to these contentions and to compare such charge with what the plaintiffs set out in this ground should have been charged in lieu of or in addition to what the court did charge. There was no proper written request for any more elaborate charge. This ground is not meritorious.

■ The petition alleged and the case was tried on the theory that the maximum speed limit of the type of bus in question was 55 miles per hour. As we have above noted, the court charged the law fully with reference to this maximum speed limit. During the instructions to the jury, the attorney for the plaintiffs handed to the court a written request to charge in effect that the maximum speed limit for the type of bus involved was 40 miles per hour rather than 55 miles per hour. The attorney for the plaintiffs, before the court concluded its charge to the jury, approached the trial court and in a low tone of voice stated that his request for the court to charge that the maximum speed limit was 40 miles per hour, instead of 55 miles per hour for the type of bus in question, was erroneous and that the speed limit for the type of bus was 55 miles per hour instead of 40 miles per hour. And the attorney for the plaintiffs orally requested the court to withdraw from the jury the written request to the effect that the maximum speed limit was 40 miles per hour rather than 55 miles per hour. The court then, at the instance of the plaintiffs' attorney, sought to comply with the oral request in the following language: "Gentlemen, this is withdrawn from your consideration. I charged you a while ago that one of the acts of negligence was that the driver was exceeding the maximum speed limit of the laws of Georgia, that is, that he was

driving faster than 55 miles per hour. And I charged you this a while ago, and this is what I am withdrawing from your consideration: That the driver was exceeding the legal limit of speed allowable for this particular bus, which they contend weighed more than 10,000 pounds, and therefore was limited by the laws of Georgia to a speed of not more than 40 miles per hour. That is withdrawn from your consideration." It is clear to our minds that the proper construction of this excerpt from the charge of the court plainly instructed the jury that the court was withdrawing the written request to charge that the maximum speed limit for the type of bus involved was 55 miles per hour as the court had first instructed and not 40 miles per hour, as the court had instructed the jury at the written request of the plaintiffs' attorney. It must be kept in mind that the error which the court committed in his second charge as to the maximum speed limit of the bus being operated at a speed of 40 miles per hour was at the written request of the attorney for the plaintiffs, and that the correction of this error was at the oral request of the attorney for the plaintiffs. Evidently, at the time the court made this correction in its charge at the oral request of the plaintiffs, the attorney for the plaintiffs considered that the court had correctly withdrawn the improper charge to the effect that the maximum speed limit of 40 miles per hour was sufficiently withdrawn, and the former charge to the effect that the maximum speed limit of the bus in question was 55 miles per hour was left before the jury for their consideration. We do not see how the jury could have been confused. If the corrected charge was not sufficiently clear to withdraw this erroneous charge, the attorney for the plaintiff should have then requested the court to make it plain. Even if necessary to do so, we are quite sure that upon an oral request from the plaintiffs the court could have and would have retired the jury for that purpose. It does not seem to comport with proper procedure to allow the plaintiffs to lead the court into this error (if it is error, and we do not agree that there is error), and then sit silently by until the verdict was returned against them and then bring up the question again on appeal.

■ Under the facts of this case it was not error to charge:

"I charge you, gentlemen, another principle of law. I charge you that where one who recklessly tests an observed and clearly obvious danger, such as attempting to beat a near and rapidly approaching railroad train or street car over a crossing, or to attempt to cross a highway in front of a near and rapidly approaching automobile or bus, notwithstanding his own honest but mistaken judgment that he has ample time to get across, may, under the particular facts, be held to have failed to exercise that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances, and to be guilty of contributory negligence which will be deemed the proximate cause of his resulting death, and, in the absence of wilful and wanton misconduct by the defendant, will preclude a recovery for such death. Now it is entirely a question for you gentlemen to determine under the evidence in this case as to what was the truth of that transaction. As to whether he was attempting in view of a clear and obvious danger to cross the highway even though he might have been mistaken as to how much time he had, is entirely a question for you to determine. In other words, if you believe the plaintiffs' father saw or could have seen the near and rapidly approaching bus and attempted to cross the highway in front of said bus, but honestly miscalculated the speed thereof and the time he had to get across said highway and was struck by said bus and killed, you would be authorized to find that he failed to exercise that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances and therefore would be authorized to find for the defendant, unless you believed that the defendant was guilty of wilful and wanton misconduct." The main assignment of error in this excerpt from the charge is on the words, "in other words, if you believe that the plaintiffs' father saw or could have seen the near and rapidly approaching bus and attempted to cross the highway in front of the bus and honestly miscalculated the speed thereof," etc. There was some evidence to the effect that along the road where the homicide occurred the visibility was good. The deceased attempted to cross from the left-hand side of the road in the direction in which the bus was being driven, and in front of the bus, and ran in front of

the bus in attempting to cross from the left-hand side of the road to the right-hand side of the road while the bus was in motion. In doing so he ran immediately in front of the bus, and it was impossible for the bus to be slowed down or stopped before striking and killing him. There was evidence also that the deceased was at his home on the left-hand side of the road, and as the bus approached where the deceased had been taking it as a passenger, he left his home and attempted to cross the road as we have above indicated. It is true that it would have been more accurate if the court had left out of his charge the words, "or could have seen" the near and rapidly approaching bus; but still, under all the facts and circumstances of this case, we do not think that the case should be reversed for this reason. In this connection we might call attention to the fact that the first paragraph of the charge excepted to seems to be without error. That paragraph deals exclusively with the principle of law regarding a reckless test and clearly obvious danger. Then the second paragraph of the excerpt from the charge above referred to deals with the failure to exercise ordinary care on the part of the deceased, under the Code, § 105-603. And the wording of the second paragraph is not altogether accurate as an abstract principle of law. But, under the whole charge and under the facts of this case, we do not think that a reversal is required because of the inaccuracy.

There are two special grounds which deal with the matter of insurance carried for the defendant bus company. The two grounds complain, because the court refused, over objections of the defendant, to allow the bus driver to testify whether the fact that he knew that the defendant carried insurance on the busses and whether this knowledge on the part of the bus driver caused him to be negligent, as the plaintiffs charge, for the reason that the bus driver knew that the company for which he worked would not be liable in damages for any negligent act of the bus driver in operating the bus. The other of these grounds assigns error based on an excerpt from the charge regarding a requirement under the law that a common-carrier bus company must post insurance to take care of damages for any negligent act causing damages in the operation of busses. The plaintiffs

had given notice to the defendant to produce and have at the trial the insurance policy. When the case was called for trial, the attorney for the plaintiffs, in the presence of the jury, apprised the court that he had given notice to produce the insurance policy of the defendant. The insurance company was not a party to the case, although the law does provide that such insurance carrier could be made a party defendant. As to the first of these grounds, the court, over objections, refused to permit, on cross-examination, the bus driver to testify as to his knowledge that the bus company for which he was working did carry insurance. And as to the other ground, the court, in instructing the jury, stated to them that, while it had been mentioned in their presence that the bus company was required to have an insurance carrier, this should not influence them in their verdict, that it should have nothing to do with their consideration of the case. There is no harm alleged that any juror was disqualified by reason of any interest whatsoever in the affairs or assets of the insurance carrier. As counsel for the plaintiffs states in his brief and assignment, the law requires that, where a defendant, as here, is a common carrier of passengers by motor-vehicle means, to prepare to indemnify any one injured or damaged by the negligence of the operators of the busses. This being true, the law presumes that the jurors and all others knew that the defendant did have an insurance carrier for this purpose. So just why go into it? And just what harm could come to the defendant if he and all other citizens are presumed to know of this responsibility? But the plaintiffs contend in this connection that, since it was elicited on direct examination, without objection, from one of the parties plaintiff, Emily Richardson, a child of the deceased, that they had only $60 life insurance on the deceased, the court, while excluding testimony with reference to insurance, should have excluded, without a written request or any sort of request, the matter of this $60 insurance. This seems like begging the question. If the attorney for the plaintiffs had desired any such withdrawal of his own testimony from the jury, he should have at least requested the court to exclude it, and we have no doubt but what it would have done so. We think

that the court was eminently correct in excluding the testimony complained of in the first ground, and in charging the jury in the other ground under discussion here that the question of insurance was not a matter which should concern the jury in their deliberation. These grounds have no merit.

■ In this ground the plaintiffs complain that the court erred in charging the jury to the effect that if the death of the deceased was entirely due to the negligence of the defendant, and if the jury should believe this, it would be their duty to find in favor of the plaintiffs in such an amount as the jury should determine was the full value of the life of the deceased. It is contended by the plaintiffs that this was an erroneous charge, for the reason that the petition nowhere alleged that the deceased was without fault. We do not think that this contention is tenable. The petition alleges, and the plaintiffs throughout endeavor to show and indeed did have evidence to show, if the jury had believed it, that the proximate cause of the death of the deceased was due to the sole negligence of the defendant. However, the court did charge, and very clearly, that if the negligence of the defendant was greater than that of the deceased, then the rule of apportionment of damages would apply. We think that this ground needs no further comment. The last paragraph of the petition alleges: "That the negligence of the driver of the bus, the agent employee of the defendant was the proximate cause of the death of Luther Huell [the deceased], said negligence being as follows: . ." It is nowhere alleged or intimated in the petition that the deceased was negligent but less negligent than the defendant. It is true that the evidence did show negligence on the part of the deceased, and the jury could have found, if they had seen fit to do so, that both the defendant and the deceased had been negligent, and that perhaps the defendant was more negligent in a degree than the deceased. This would bring into question the principle of law as applied to apportionment of damages. The court fully charged this principle of law, therefore this ground has no merit.

■ The next special ground assigns error because the court charged in effect that the defendant admitted that it caused the death of the deceased by the operation of its bus on the date in

question, but the defendant contended that at the time of the homicide it was in the exercise of due care under all the circumstances, and that the deceased rushed out into the road in front of the bus, and the deceased was warned by one of the witnesses for the plaintiffs of the danger in rushing out in front of the bus, and that the deceased was recklessly trying to get across the road in front of the bus; and that in so doing he did not exercise due care and diligence, and that he was thus the author of his own death. The error assigned by the plaintiffs on this ground is that the charge was erroneous, prejudicial, and harmful because the defendants filed no affirmative defenses to this effect. We can not follow the reasoning of eminent counsel for the plaintiffs in this regard. This again brings into question what is generally known as a plea of contributory negligence, that is, wherein the defendant admits negligence on its part, but contends that the negligence of the defendant was not greater than that of the plaintiffs. A plea of this kind usually, under the law prevailing in this State, shifts the burden from the plaintiffs to the defendant to prove such affirmative defenses. But we know of no law where, as here, the absence of such a plea eliminates the burden which rests upon the plaintiffs to prove by a preponderance of the testimony that the negligence of the defendant was the sole proximate cause of the homicide, without any mixture of negligence on the part of the deceased or that, even if the deceased was negligent, his negligence was less than that of the defendant. This ground has no merit.

 Error is assigned in this ground because the court did not charge specifically that Luther Huell was a prospective passenger, and that the defendant owed to him extraordinary care. We have studied this contention very carefully and have come to the conclusion that, while the judge in his general charge did not use these words, he did in effect charge this principle, and in the absence of a special request no error appears in this ground. We have particularly in mind what we have said in division 3 hereinabove. We did not fully in that division set out all of the charge concerning the duty of the bus driver in the event the jury found that the bus was being operated at a speed less than 55 miles per hour, but the judge did charge in

effect that, if the bus driver was operating the bus at a speed of less than 55 miles per hour but at a speed greater than that which was justified to make it safe under all the existing conditions and circumstances, taking into consideration the then-existing circumstances of traffic, visibility, width of the road, etc., and that such negligence was the proximate cause of the death of the deceased, the plaintiff would be entitled to recover. It is our opinion that, under all the evidence and the whole charge of the court, the errors assigned in this ground of the motion for a new trial do not require a reversal.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*