34107.   GREEN *v.* JOHNS *et al.*

Decided July 16, 1952—Rehearing denied July 29, 1952.

648

*Watson & Keenan*, for plaintiff in error.

*Burt & Burt*, contra.

WORRILL, J. (After stating the foregoing facts). ■ In this court the defendant in error made a motion to dismiss the writ of error on the ground that the bill of exceptions contains no assignment of error on a final judgment. The motion is without merit and is denied for the following reasons: A judgment reciting the rendition of the verdict in favor of the defendant's plea in bar and dismissing the plaintiff's action was entered by the

trial court. The plaintiff thereupon filed a motion for new trial and by amendment added two special grounds. Error was assigned on the judgment denying the motion for new trial. If it could be said that the judgment reciting the rendition of the verdict and dismissing the plaintiff's action was the final judgment, rather than the judgment overruling the motion for new trial, the motion is without merit because, not only was error assigned on the judgment denying the motion for new trial, but the judgment dismissing the plaintiff's action—which the movant contends was the final judgment—was specified to be sent up as a part of the record and appears therein. It is thus shown that the case was terminated in the trial court, and this court has jurisdiction to review the judgments complained of in the bill of exceptions. *Albany Federal &c. Association* v. *Henderson,* 198 *Ga.* 116 (31 S. E. 2d, 20).

■ Included in the answer of the defendants denying the right of the plaintiff to recover, was a plea in bar on the ground that the plaintiff had assigned and transferred his rights, and had been paid in full for his loss and was not the real party in interest and not entitled to maintain the action. It appeared that there was no conflict in the evidence, and the question turned upon the construction of a so-called "loan receipt" executed by the plaintiff to the insurance company and reading as follows: "Received from the Old Colony Insurance Company (hereinafter referred to as 'company') the sum of four hundred eighty-two 06/100 dollars ($482.06) as a loan, without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage to the property described below, or from any insurance effected on such property, and as a security for such repayment the undersigned hereby pledges to the said 'company' all his, its or their claim or claims against said person, persons, corporation or corporations or other parties, or from any insurance carrier or carriers, and any recovery thereon, and hereby delivers to said 'company' all documents necessary to show his, its or their interest in said property. The undersigned covenants that no settlement has been made by the undersigned with any person, persons, corporation or corporations, or other parties

against whom a claim may lie, and no release has been given to any one responsible for such loss, and that no such settlement will be made, nor release given without the written consent of the said company; and the undersigned covenants and agrees to cooperate fully with the said company, to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its or their name. In further consideration of said advance the undersigned hereby guarantees that he, it or they are the owner(s) of said property and entitled to recover upon said claim for loss or damage thereto, and hereby appoint(s) the managers and/or agents of the said 'company' and their successors severally, his, its or their agent(s) in fact, with irrevocable power, to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his, its or their name, but at the expense of the said 'company,' any and all legal proceedings that the said 'company' may deem necessary to enforce such claim or claims, and to execute in the name of the undersigned any documents that may be necessary to carry the same into effect for the purposes of this agreement. Any legal proceedings are to be under the exclusive direction and control of said 'company.' The property hereinabove set forth is as follows: Dwelling at 1112 9th Ave., Albany, Ga."

Also in evidence was a photostatic copy of a draft payable to the plaintiff and the Bank of Albany in the amount of $482.06 and providing that it was in full settlement, release, and discharge of all claims and demands against Old Colony Insurance Company arising from loss or damage on or about April 25, 1951, to the property described in policy number 18205, issued at its Albany, Georgia, agency, in consideration of which "said policy is hereby reinstated." On the reverse side of the draft and above the endorsement of the plaintiff and others, appeared the following: "In consideration of payment under this draft, the Old Colony Insurance Company is released and forever discharged from all claims and damages by reason of the loss or account for which the draft is given, as indicated on the face thereof."

. The plaintiff introduced in evidence the insurance policy which, among other things, provided as follows: "This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company."

Also in evidence was the proof of loss, and there was testimony to the following effect: The plaintiff testified that he was the owner of the damaged house with insurance coverage, and after the fire he was paid all damage, as evidenced by the documents above mentioned, but no money was paid at the time he signed the "loan receipt," and he understood that it would have to come later from the company, and it was to forward a draft for the amount stated in the receipt. He did not employ lawyers, and did not know that a suit in his name had been filed against the defendants until he was so informed by an attorney for the insurance company. The defendants stipulated that the facts surrounding the "loan receipt" were as asserted by the plaintiff, and offered no evidence to the contrary, but contended that the "loan receipt" constituted a settlement and payment of the loss, and that the plaintiff was not the real party in interest and not entitled to maintain the action.

The court referred to the jury the question of whether or not the plea in bar was sustained by the evidence. The jury returned a verdict in favor of the plea in bar; and the court, reciting such verdict, entered judgment dismissing the action. The plaintiff filed a motion for a new trial. Under the general grounds, the question is raised as to the legal effect of the document executed by the plaintiff to the insurance company and denominated a "loan receipt" and hereinbefore set out in full. It was contended in the plea in bar that, by reason of the execution of the document by the plaintiff, he had ceased to be the real party in interest and could not prosecute the action. If the plaintiff did in law transfer and assign his right of action and thus subrogate the insurance company, it is manifest that the plea in bar should be upheld; but, if only a loan agreement was consummated between the parties, the plaintiff remained the real party in interest. There is a diversity of rulings on this question in many jurisdictions, but in this State it has been ruled, in *McCann* v. *Dixie Lake & Realty Co.*, 44 *Ga. App.* **700**

(162 S. E. 869), in dealing with a similar document, that the plaintiff did not thereby assign and transfer her interest and was the real party in interest. The trial judge charged the jury that, "If you find in favor of the plaintiff, you would not be authorized to find for any article that was insured that she has been paid its value; but if you find for the plaintiff, you would return a verdict for the value of the articles that were not paid for by the insurance company." Through her husband she had received $1675 for all the articles of jewelry not returned by the bailee defendant except two pieces which had not been insured. This court held that the charge was error because it "virtually assumed that the plaintiff had assigned her right of action as to that portion of her property for which she received insurance; because it directed a verdict for the defendant to the extent of the insurance; and because it was unauthorized by the evidence." It is clear that in the view of this court the plaintiff was entitled to sue in her own name notwithstanding the document executed by her as a "loan receipt," and to sue for the loss of all the articles of jewelry, the "loan receipt" being no concern of the defendant. In Augusta Broadcasting Co. v. United States, 170 Fed. 2d, 199, a similar ruling was made by the Circuit Court of Appeals in a Georgia case. It is contended by counsel for the defendant in error that what was there said was obiter. To this we can not agree. A motion to dismiss the action was made on the grounds: (1) that the plaintiff had assigned its claim to the insurance company, and (2) that the action was not prosecuted in the name of the real party in interest, and (4) that the allegations of negligence were mere conclusions. The trial court, without considering the other grounds, sustained the motion on the ground of want of sufficient allegations of negligence. The Circuit Court of Appeals held that in doing so the trial court erred. Since, however, it is a well-established rule that, if a general demurrer or motion to dismiss should be sustained on any ground urged, and the trial court sustains the demurrer or motion for an insufficient reason, the judgment must be affirmed, it was incumbent upon the Circuit Court of Appeals to determine whether or not either of the other two grounds was good. In making this investigation the court ruled that the "loan receipt" involved did not affect

the right of the plaintiff to sue as the real party in interest, the Georgia case above cited being shown in the footnote. Since such determination became necessary, it follows that the ruling on the "loan receipt" was not obiter. From what is said above, we hold that a finding was demanded as a matter of law against the plea in bar, and the trial court erred in denying the plaintiff's motion for new trial on the general grounds.

But it is urged by the defendant in error that, even if the plaintiff did not assign and transfer his right of action by virtue of the "loan receipt," he subsequently did so in accepting the check which bore upon it a formal assignment and transfer of the plaintiff's rights. Let it be remembered, however, that, when the plaintiff executed the "loan receipt," the consideration therefor, $482.06, was not concurrently delivered to the plaintiff, but it was agreed that this would be later forthcoming from the home office of the insurance company. Hence, when it was forwarded to the plaintiff, it represented nothing but a due compliance with the agreement. It did not, as contended by the defendant in error, constitute a novation, being without the requisite new consideration. *Fulenwider* v. *Fulenwider*, 188 *Ga.* 856, 862 (5 S. E. 2d, 20), and cit.; Code, § 20-115. While, under authorities cited by the defendant in error, there are instances where a check with appropriate statements thereon may work a settlement and extinguishment of the payee's right to sue in the premises, it is well settled that such attempts to add conditions of acceptance are abortive unless there has theretofore existed between the parties some controversy in the matter. In the present case, at the time of the "loan receipt" here under consideration, no dispute existed, and nothing remained to be done except for the insurance company to forward the consideration in the amount of $482.06. The attempt to attach any new conditions in doing so was abortive and without legal effect.

■ The first special ground of the motion for new trial and the exceptions pendente lite assign error upon the refusal of the court to pass upon the plea in bar and hear evidence without the aid of a jury. Inasmuch as we have ruled that a finding was demanded as a matter of law against the plea in bar, it is unnecessary to consider these objections. It might be stated, however, with respect to the motion that a ruling on the plead-

654

ings may not be made a ground of objection in a motion for new trial. *Southeastern Air Service* v. *Carter*, **78 Ga. App.** 8 (1) (50 S. E. 2d, 156).

■ The portion of the charge of the court complained of in the second special ground of the motion for new trial not being set out therein, nothing is presented for decision. *Fountain* v. *State*, 71 *Ga. App.* 191, 194 (3) (30 S. E. 2d, 359).

*Judgment reversed. Sutton, C.J., and Felton, J., concur.*